UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

DONNISH WILLIAMS,

    Defendant.
_____/

Case No. 18-20475

SENIOR U.S. DISTRICT JUDGE
ARTHUR J. TARNOW

U.S. MAGISTRATE JUDGE
DAVID R. GRAND

**ORDER AND OPINION GRANTING MOTION TO SUPPRESS EVIDENCE [17]**

Defendant Donnish Williams is charged with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). She moves to suppress the firearm, which was recovered in a warrantless search of her backpack, which was in her work vehicle. The motion is fully briefed, and the Court held a hearing on September 25, 2018.

**FACTUAL BACKGROUND**

On the afternoon of June 12, 2018, officers of the Detroit Police Department responded to a call that a Detroit Public Works ("DPW") employee was carrying a firearm. When the officers reached the DPW headquarters, two DPW supervisors showed them a photograph of a torso with a gun tucked into the waist-band of a pair of jeans. Therssen BodyCam at 3:23; Def. Ex. 2. The torso in the photograph was

tattooed with a distinctive cartoon doll. Def. Ex. 2. The picture also reveals that the subject of the photograph is wearing a blue braided belt and a green safety vest. *Id.*

The supervisors told the officers where to find the employee who was alleged to be carrying a pistol, and noted that she would "probably [be] wearing a backpack." Therssen BodyCam at 11:03. The officers then drove to the public park where Defendant Williams was working. When Ms. Williams approached the officers and identified herself, Officer Therssen immediately frisked her by pulling up her shirt and turning her around. Id. at. 25:10-20. Upon finding no weapon, he asked, "Where's that weapon you had on you?" Ms. Williams replied, "I never had no weapon on me." The officer then asked, "where's your backpack?" and Ms. Williams replied, "I don't have no backpack with me." Id at. 25:17. She then pulled up her shirt to demonstrate he had no gun on her person, revealing a blue braided belt and a tattoo of a similar size and shape as the one in the photograph. Id. at. 25:29; Def. Ex. 2.

Ms. Williams then engaged in a brief verbal exchange with the officers and the site foreperson, Ms. Hill. She told the officers she took the bus to work but was then corrected by Ms. Hill, who said that she took the bus to the DPW yard but then drove to the worksite at the park. Jones Bodycam 2 at 1:00. Upon being asked which car was Ms. Williams,' Ms. Hill pointed at one of the parked trucks and exclaimed, "she drives it, it one of the pickups…the one right there." Id. Officer Therssen then

walked over to the truck, opened the front door, and searched the driver's compartment. Therssen BodyCam at 25:55-26:40. He then proceeded to open the back door, and there he found a blue backpack. Id. He opened the backpack, rifled through its contents, and withdrew the pistol that is the subject of this motion. Id.

**ANALYSIS**

The Fourth Amendment provides,

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.

A warrantless search violates the Fourth Amendment unless it falls into one of several exceptions. The Government argues that Ms. Williams does not have standing to argue a Fourth Amendment violation, and that even if she does, the consent and automobile exceptions would apply to the search. The Court will consider first whether or not Ms. Williams has standing to challenge the warrantless search. It will then consider whether or not the consent or automobile exceptions to the warrant requirement apply.

### I. Fourth Amendment Standing

The threshold question is whether the defendant has standing to challenge the search and seizure of her backpack. A defendant who has "neither a property nor a

possessory interest in the automobile, nor an interest in the property seized" lacks Fourth Amendment standing. *Rakas v. Illinois*, 439 U.S. 128, 145 (1978) (holding that defendants lacked standing because they made "no showing that they had any legitimate expectation of privacy in the glove compartment or area under the seat of the car in which they were merely passengers."). Whether such an interest in the place searched exists depends on "1) whether [the defendant] manifested a subjective expectation of privacy in the object of the challenged search; and 2) whether society is prepared to recognize that expectation as legitimate." *United States v. Sangineto-Miranda*, 859 F.2d 1501, 1510 (6th Cir. 1988). The subjective expectation of privacy analysis is fact intensive and depends on several factors in addition to "a proprietary or possessory interest in the place to be searched." *United States v. King*, 227 F.3d 732, 744 (6th Cir. 2000). Those factors include "whether the defendant has the right to exclude others from the place in question; whether he had taken normal precautions to maintain his privacy; whether he has exhibited a subjective expectation that the area would remain free from governmental intrusion; and whether he was legitimately on the premises." *Id*.

A defendant's expectation of privacy in a place may exceed his or her contractual or proprietary rights to the place searched. *Byrd v. United States*, 138 S. Ct. 1518 (2018) (holding that a driver of a rental cars who is not listed on the lease and therefore in violation of the terms of the lease still has Fourth Amendment

standing to challenge a search of the car); *Minnesota v. Olson*, 495 U.S. 91 (1990) (holding that an overnight guest may have standing to challenge the search of a house in which he had no ownership interest); *United States v. Smith*, 263 F.3d 571 (6th Cir. 2001) (also holding that an unauthorized driver of a rental car has standing to challenge a search). Thus, contract law principles inform Fourth Amendment standing, but do not govern it.

The government's reliance on DPW regulations and employment contracts is therefore insufficient. The Court need not decide whether the Ms. Williams had an expectation of privacy in the car itself, because even if she did not, she clearly had an expectation of privacy in her zipped backpack, over which she retained both ownership and the right to exclude others. *See United States v. Peyton*, 745 F.3d 546, 552-54 (D.C. Cir. 2014) (holding that police officers' search of a shoebox in the defendant's room, after his great-grandmother had consented to the search of the house, was illegal because the defendant clearly had an expectation of privacy in the shoebox apart from that in his grandmother's house); *United States v. Taylor*, 600 F.3d 678 (6th Cir. 2010) (holding that the search of a defendant's shoebox in an apartment was illegal, even though the defendant was not a tenant in the apartment and the actual tenant consented to the search); *United States v. Buchner*, 7 F.3d 1149, 1154 (5th Cir. 1993) ("The owner of a suitcase located in another's car may have a legitimate expectation of privacy with respect to the contents of his suitcase.");

*United States v. Welch*, 4 F.3d 761, 764 (9th Cir. 1993) ("The shared control of 'host' property does not serve to forfeit the expectation of privacy in containers within that property.") *citing United States v. Karo*, 468 U.S. 705, 725-27 (1984) (O'Connor, J., concurring)). Further, a legitimate expectation of privacy in a place is not forfeited just because it is unlocked, or because others may at times have access to the place. *Katz v. United States*, 389 U.S. 347, 361 (1967) ("The point is not that the booth is accessible to the public at other times but that it is a temporarily private place whose momentary occupants' expectations of freedom from intrusion are recognized as reasonable.").

The next question—whether society is prepared to recognize an expectation of privacy in a backpack in a work vehicle—should also be answered in the affirmative. One does not lose expectations of privacy in one's personal effects merely because they are stored on another's property. Indeed that is not the law. *Bond v. United States*, 529 U.S. 334 (2000) (holding that passengers on a greyhound bus had a legitimate expectation of privacy in luggage stored in an overhead compartment); *United States v. Waller*, 426 F.3d 838, 848 (6th Cir. 2005) ("The expectation of privacy in one's luggage is not lessened by storing it on the premises of a third-party. Rather, the expectations may well be at their most intense when such effects are deposited temporarily or kept semi-permanently in places under the general control of another.") (Citations omitted).

It is not even the policy of DPW, the internal regulations of which bar employees from using work vehicles illegally, but nowhere provide that DPW can search an employee's personal belongings. Gov't Ex. C. The Government argued at the hearing that such an expectation of privacy cannot lie in contraband, but this position fails to appreciate the core Fourth Amendment principle that illegal searches do not become legal just because contraband is recovered from a person's personal effects. *Id*. To accept this contention would be to say that the ends justify the means, which is the antithesis of the exclusionary rule.

There is a question of whether, by denying that she had a backpack with her, Ms. Williams abandoned the backpack and with it her Fourth Amendment standing. Repudiating one's ownership in an item can constitute abandonment. *United States v. Pino*, 855 F.2d 357 (6th Cir. 1988). But there is no reason to think lying about the whereabouts or existence of a container would constitute abandonment. However, Ms. Williams' denial of having a backpack "with her" was ambiguous, especially given the distance between the stop-and-frisk and the vehicle. Critically, at no point during that encounter did she disclaim ownership over the backpack in the vehicle. Ms. Williams therefore has standing to challenge the search of her backpack.

II. *Consent*

Evidence will not be suppressed, however, if valid consent was given for the warrantless search. Here, the parties dispute whether consent was in fact given for

the search of the vehicle. The Court need not rule on the issue of consent to search the vehicle, because even if consent were given by Ms. Williams' supervisors, such authorization would not extend to the backpack. *Taylor*, 600 F.3d 678; *United States v. Purcell,* 526 F.3d 953 (6th Cir. 2008) (holding that where the cohabitating girlfriend of a defendant gave the police permission to search the apartment, including suitcases and duffel bags within such consent became invalid once they discovered men's clothing in one of the bags). Indeed, no DPW supervisors had "common authority" over Ms. Williams' backpack. *See United States v. Matlock*, 415 U.S. 164, 171 (holding that permission to search could be obtained "from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected."). Even if the officer reasonably believed he had consent to search the car from DPW, he could not have reasonably believed such consent extended to searching Ms. Williams' personal backpack.

   III.   *Probable cause*

The Court must also consider whether the evidence can be saved by the automobile exception to the warrant requirement. *United States v. Padro*, 52 F.3d 120, 122 (6th Cir. 1995) ("Although searches of vehicles…are exempt from the warrant requirement of the Fourth Amendment, a demonstration of probable cause is nevertheless required, to justify such a search."). Where a law enforcement officer has probable cause to search the car, he or she may also search containers within.

*California v. Acavedo,* 500 U.S. 565 (1991). The test for probable cause is "simply whether there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Padro*, 52 F.3d at 123, *citing Illinois v. Gates*, 462 U.S. 213, 238 (1983). Where probable cause is based on an anonymous tip, courts should consider the totality of the circumstances to determine whether that tip gives the officers probable cause. *Gates*, 462 U.S. at 230.

In this case, the tip identifying Ms. Williams as having a firearm did not give the officers probable car to search the vehicle or the backpack therein.

First, and most critically, the tip never alleged that the firearm was in the car or the backpack. The police were provided a photograph of a torso with a gun protruding from the waistband and an anonymous tip that the photograph was taken that day and represented Ms. Williams carrying a pistol concealed on her person. The officer's guess that the gun would be in the backpack turned out to be a good one, but it was not supported by the tip from which the Government seeks to prove probable cause.

Second, an uncorroborated anonymous tip cannot provide officers with probable cause. *Padro,* 52 F.3d at 123 ("The informant's anonymity and failure to state the basis of her knowledge severely undercuts the reliability of the information."). Here, the cell-phone photograph relied on three assertions from an unknown third party: that the figure in the photograph is Ms. Williams, that the

photograph was taken that day, and that the photograph represented an actual concealed carry.[1] There was no tip that the gun was in her backpack. By the time they reached the police, those assertions had passed up the chain of command to the DPW Human Resources Department and back down again to the supervisors who met the officers in the yard. Therssen BodyCam 3:21-3:54. The supervisors' statements to the officers made no distinction between the contents of the tip and their own personal assumptions. By the time the officers received the tip they had no way of knowing how it compared to version relayed by the original tipster. *Id*. An anonymous tip alleging what might only be workplace misconduct, paraphrased by an indeterminate number of intermediaries, cannot provide the high level of reliability demanded by *Padro*.

Third, the anonymous tip is unsupported by sufficient indicia of reliability. Anonymous tips may establish probable cause when they are corroborated by the facts on the scene. *Padro,* 52 F.3d at 124 (holding that tips become credible when they accurately predict "future actions of third parties not easily predicted"). Here, rather than corroborating the tip, the officers' initial investigation of the scene undermined the tipster's assertion that the photograph was taken earlier that day. No

---

[1] It is unclear from the Record whether the officers had probable cause, or even a suspicion, that Ms. Williams was a felon. Openly carrying a firearm is legal in Michigan. The Government made much of the fact that DPW did not permit its employees to carry firearms, but police officers are not empowered to undertake warrantless searches to enforce work-place requirements.

gun was found on Ms. Williams' person. Even if the officers had reasonable suspicion to frisk her based on the tip, such suspicion diminished once they discovered that Ms. Williams was not carrying a pistol.

There was no showing that the police could not have secured the scene and sought a warrant to search the backpack. However, they may have recognized that they did not have sufficient probable cause to convince a magistrate judge to issue such a warrant. Indeed, the search of the vehicle and the backpack within was unsupported by probable cause, and the warrantless search of Defendant's backpack was therefore illegal.

## CONCLUSION

The officers' conduct was of the sort the exclusionary rule is designed to deter. They made a deliberate decision to circumvent the warrant requirement. Evidence ascertained from the search of the backpack will therefore be suppressed.

Accordingly,

**IT IS ORDERED** that Defendant's Motion to Suppress Evidence [17] is **GRANTED**.

**SO ORDERED**.

s/Arthur J. Tarnow
Arthur J. Tarnow
Dated: October 16, 2018     Senior United States District Judge