UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

DONNISH WILLIAMS,

    Defendant.
_____/

Case No. 18-20475

SENIOR U.S. DISTRICT JUDGE
ARTHUR J. TARNOW

U.S. MAGISTRATE JUDGE
ELIZABETH A. STAFFORD

**ORDER DENYING MOTION FOR RECONSIDERATION [30]**

Defendant Donnish Williams is charged with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). On August 20, 2018, she moved to suppress evidence obtained during the course of her arrest, including the firearm which was seized from her backpack in her work vehicle [Dkt. #17]. The Court held a hearing on this motion on September 25, 2018, and on October 16, 2018 it issued an order to suppress all evidence seized from the backpack [28]. The Government now moves for the Court to reconsider its ruling [30].

**LEGAL STANDARD**

Local Rule 7.1(h)(3), which governs motions for reconsideration, provides:

> "Generally, and without restricting the court's discretion, the court will not grant motions for rehearing or reconsideration that merely present the same issues ruled upon by the court, either expressly or by reasonable implication. The movant must not only demonstrate a palpable defect by which the court and the parties and other persons entitled to be heard on the motion have

> been misled but also show that correcting the defect will result in a different disposition of the case."

*See Hansmann v. Fid. Invs. Institutional Servs. Co.*, 326 F.3d 760, 767 (6th Cir. 2003) (A motion for reconsideration is granted only "if the movant demonstrates that the district court and the parties have been misled by a palpable defect, and correcting the defect will result in a different disposition of the case"). "A palpable defect is a defect which is obvious, clear, unmistakable, manifest or plain." *Fleck v. Titan Tire Corp.*, 177 F. Supp. 2d 605, 624 (E.D. Mich. 2001) (internal citations and quotations omitted).

## ANALYSIS

### 1. Fourth Amendment Standing

The Government argues that because Ms. Williams didn't have Fourth Amendment Standing to challenge the search of the car, she lacked standing to challenge the search of her backpack. This position repeats the arguments made in its opposition to the Motion to Suppress, and it is therefore out of place in a Rule 7.1(h) motion. It is also wide of the mark. The Court specifically declined to decide whether Ms. Williams had standing to challenge the search of the car because such a finding was not necessary for its holding. She had standing to challenge the search of her backpack, and that was enough. (Dkt. 28 at 5).

The Government suggests that because vehicles have a special place in Fourth Amendment jurisprudence, a defendant who lacks standing in a vehicle loses

standing in containers within the vehicle. The Court has already considered and rejected this argument as inconsistent with binding precedent. (Dkt. 28 at 5-7). The cases surveyed all express a common theme, one that is summarized succinctly in *United States v. Waller*, 426 F.3d 838, 848 (6th Cir. 2005) (citations omitted): "The expectation of privacy in one's luggage is not lessened by storing it on the premises of a third-party. Rather, the expectations may well be at their most intense when such effects are deposited temporarily or kept semi-permanently in places under the general control of another."

It would be a harsh rule to deny Fourth Amendment protections to bags left in shared spaces. As the *Waller* Court continued, *citing United States v. Block*, 590 F.2d 535, 541 (4th Cir. 1978), "Indeed, to the sojourner in our midst[,] all of us at one time or another[,] the suitcase or trunk may well constitute practically the sole repository of such expectations of privacy as are had." *Waller*, 426 F.3d at 848. The Government's reliance on *United States v. Grecni*, 1991 U.S. App. Lexis 18108 (6th Cir. 1991), and *United States v. Gillis*, 358 F.3d 386 (6th Cir. 2004) is therefore misplaced, not only because both cases deal with abandoned vehicles, but because the issue decided in each case was whether the defendant had standing to challenge the search of the car, not a container within the car.

The Government next argues that society does not recognize Ms. Williams' expectation of privacy as legitimate. Again, though the Government argues that Ms.

Williams could not expect that the vehicle be kept free from inspection from her employer, it does nothing to call into question the Court's finding that DPW internal regulations "nowhere provide that DPW can search an employee's personal belongings." (Dkt. 28 at 5 citing Gov't Ex. C).

2. **Consent**

The Government also repeats its argument that consent to search the vehicle can extend to the backpack.[1] The Court used the "common authority" test for third party consent as outlined by *United States v. Matlock*, 415 U.S. 164, 171 (1974). The Court relied on *United States v. Purcell*, 526 F.3d 953 (6th Cir. 2008) for guidance in the application of this test because that case is binding authority and dealt with a similar issue as this case. Since the question is whether the third party who consented had "common authority" over the container searched, there is no reason to think that the outcome of *Purcell* would have been any different if the search transpired in a vehicle instead of a hotel room. There was and is no reason to consult the older, out-of-circuit precedent of *United States v. Carter*, 569 F.2d 801 (4th Cir. 1977).

3. **Probable Cause**

The Government argues that because the anonymous tip that Ms. Williams was carrying a firearm was relayed through DPW human resources, it is more

---

[1] The parties dispute whether consent was actually given, and the Court has not reached this issue.

reliable for probable cause purposes. It ignores the Court's analysis under *United States v. Padro*, 52 F.3d 120, 122 (6th Cir. 1995) and does nothing to undermine the Court's holding that passing an anonymous tip through an "indeterminate number of intermediaries" diminishes, rather than bolsters, the tip's reliability. (Dkt. 28 at 10). Indeed, a stop-and-frisk that turned up no gun, in response to a tip that Ms. Williams was carrying a gun on her person, did nothing but diminish the probable cause for a further search. (Id. at 10-11).

   4. **DPW's Relationship with DPD**

The Government's final basis for reconsideration is a combination of a probable cause argument and a consent argument. The issue raised does not solve the Government's main factual problem in this case, that Ms. Williams' backpack was not DPD property. However one construes the purported consent or authorization of DPD supervisors as to the work vehicle, there is no reason that an employer's consent or authorization should justify an otherwise illegal search of an employee's personal effects. The Government argues that DPW's call to DPD and "information gathered at the yard" constituted the basis for the police search. The police call was not put on the record, however, and the government specifies no information gathered in the yard that could create probable cause to search the backpack. The Court reviewed the BodyCam footage of the conversation in the yard between Officer Therssen and the DPW supervisors and found that "[t]he

reliable for probable cause purposes. It ignores the Court's analysis under *United States v. Padro*, 52 F.3d 120, 122 (6th Cir. 1995) and does nothing to undermine the Court's holding that passing an anonymous tip through an "indeterminate number of intermediaries" diminishes, rather than bolsters, the tip's reliability. (Dkt. 28 at 10). Indeed, a stop-and-frisk that turned up no gun, in response to a tip that Ms. Williams was carrying a gun on her person, did nothing but diminish the probable cause for a further search. (Id. at 10-11).

   4. **DPW's Relationship with DPD**

The Government's final basis for reconsideration is a combination of a probable cause argument and a consent argument. The issue raised does not solve the Government's main factual problem in this case, that Ms. Williams' backpack was not DPD property. However one construes the purported consent or authorization of DPD supervisors as to the work vehicle, there is no reason that an employer's consent or authorization should justify an otherwise illegal search of an employee's personal effects. The Government argues that DPW's call to DPD and "information gathered at the yard" constituted the basis for the police search. The police call was not put on the record, however, and the government specifies no information gathered in the yard that could create probable cause to search the backpack. The Court reviewed the BodyCam footage of the conversation in the yard between Officer Therssen and the DPW supervisors and found that "[t]he

reliable for probable cause purposes. It ignores the Court's analysis under *United States v. Padro*, 52 F.3d 120, 122 (6th Cir. 1995) and does nothing to undermine the Court's holding that passing an anonymous tip through an "indeterminate number of intermediaries" diminishes, rather than bolsters, the tip's reliability. (Dkt. 28 at 10). Indeed, a stop-and-frisk that turned up no gun, in response to a tip that Ms. Williams was carrying a gun on her person, did nothing but diminish the probable cause for a further search. (Id. at 10-11).

   4. **DPW's Relationship with DPD**

The Government's final basis for reconsideration is a combination of a probable cause argument and a consent argument. The issue raised does not solve the Government's main factual problem in this case, that Ms. Williams' backpack was not DPD property. However one construes the purported consent or authorization of DPD supervisors as to the work vehicle, there is no reason that an employer's consent or authorization should justify an otherwise illegal search of an employee's personal effects. The Government argues that DPW's call to DPD and "information gathered at the yard" constituted the basis for the police search. The police call was not put on the record, however, and the government specifies no information gathered in the yard that could create probable cause to search the backpack. The Court reviewed the BodyCam footage of the conversation in the yard between Officer Therssen and the DPW supervisors and found that "[t]he

supervisors' statements to the officers made no distinction between the contents of the tip and their own personal assumptions." (Dkt. 28 at 10).

## CONCLUSION

The Government has presented no evidence of a "palpable defect" in the Court's Order and Opinion on October 16, 2018.

Accordingly,

**IT IS ORDERED** that the Government's Motion for Reconsideration [30] is **DENIED**.

**SO ORDERED**.

                                                       s/Arthur J. Tarnow
                                                       Arthur J. Tarnow
Dated: November 19, 2018           Senior United States District Judge